USCA1 Opinion

 

 August 17, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2418 UNITED STATES, Appellee, v. DENNIS E. FRIEL, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Selya and Stahl, Circuit Judges. ______________ ____________________ Dennis E. Friel on brief pro se. _______________ Richard S. Cohen, United States Attorney, David R. Collins, __________________ __________________ Assistant United States Attorney, and F. Mark Terison, Assistant ________________ United States Attorney, on brief for appellee. ____________________ ____________________ Per Curiam. Appellant Dennis E. Friel was indicted __________ by a federal grand jury with two counts of possession of firearms by a person convicted of a felony in violation of 18 U.S.C. 922(g)(1) and 924(a)(2).1 Appellant was convicted, after a jury trial, on both counts. He raises six issues on appeal, all of which we reject for the following reasons: 1. Appellant argues that his conduct does not come within language of 922(g)(1) requiring that the possession of the firearms be "in or affecting commerce." At trial, the government's expert testified that one of the weapons had been manufactured in Massachusetts in 1987 and the other had been manufactured in Italy between 1951 and 1968; both weapons, according to this witness, had traveled in interstate commerce to arrive in Maine. In United States v. Gillies, 851 F.2d 492 (1st _____________ _______ Cir.), cert. denied, 488 U.S. 857 (1988), we addressed a _____________ similar argument. The defendant in Gillies had possessed in _______ Massachusetts, in 1986, a gun that had, in 1977, travelled from Brazil to Florida. The defendant argued that the in- state possession of a weapon that had, at some time in the past, arrived from out of state, did not meet the affecting ____________________ 1. Section 922(g)(1) provides in relevant part that "[i]t shall be unlawful for any person . . . who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm. . . ." commerce requirement. We rejected this interpretation of 922(g)(1). Id. at 493. ___ We held that "possession of a gun that did travel ___ interstate before the felon possessed it" satisfied 922(g)(1). Id. at 494. That is, the affecting commerce ___ language includes "past or present effects." Id. (emphasis ____ ___ added). In so holding, we relied on Scarborough v. United ___________ ______ States, 431 U.S. 563 (1977). In considering the predecessor ______ to 922(g)(1), the Supreme Court held that "Congress sought to reach possessions broadly, with little concern for when the nexus with commerce occurred." Id. at 577. We cited ___ Scarborough for the conclusion that "as long as the gun ___________ previously had travelled in interstate commerce," a felon in __________ possession of it violated the statute. 851 F.2d at 494. 2. Appellant next asserts that the government failed to prove not only that he "knowingly" possessed firearms, but that he "knowingly" violated the law in doing so. Appellant bases his argument on the language in the indictment which states that appellant "knowingly possessed, in and affecting commerce, a firearm . . . in violation of Title 18. . . ." We have rejected this type of argument, stating that "[t]his court, and every court to have considered the issue, has held that the government need not prove the defendant knew he was violating the federal firearms law nor would `ignorance of the law' be a defense in -3- such a prosecution." United States v. Ramos, 961 F.2d 1003, _____________ _____ 1005 (1st Cir.) (citing cases), cert. denied, 113 S. Ct. 364 ____________ (1992). 3. Appellant argues generally that 922(g)(1) is unconstitutional. Specifically, he asserts that the limits imposed by 922(g)(1) violate the constitutional right to bear arms. The Supreme Court plainly has held that the Second Amendment -- "A well regulated Militia, being necessary to the security of a free State, the right of people to keep and bear Arms, shall not be infringed" -- applies only to firearms having a "reasonable relationship to the preservation or efficiency of a well regulated militia. . . ." United States v. Miller, 307 U.S. 174, 178 (1939); see _____________ ______ ___ also Lewis v. United States, 445 U.S. 55, 65 n.8 (1980) ____ _____ ______________ (legislative restrictions on the ability of a felon to possess a firearm do not "trench upon any constitutionally protected liberties"). Appellant's reliance on the Constitution of the State of Maine is unavailing. See United States v. Minnick, ___ _____________ _______ 949 F.2d 8, 10-11 (1st Cir. 1991) (Supremacy Clause of United States Constitution prevents reliance on the qualified right to bear arms contained in the New Hampshire Constitution as a defense to 922(g)(1)), cert. denied, 112 S. Ct. 1698 _____________ (1992). In any event, as the government points out, the Maine Constitution does not prohibit the state from making it -4- a crime for a convicted felon to possess a firearm. See ___ State v. Brown, 571 A.2d 816, 817 (Me. 1990) ("no absolute _____ _____ right" to bear arms exists under Maine Constitution). 4. The district court denied appellant's motion, made under Fed. R. Crim. P. 6(e)(3)(C)(i), to disclose all grand jury proceedings leading up to his indictment. This rule provides that disclosure of such proceedings may be made "when so directed by a court preliminarily to or in connection with a judicial proceeding." In support of his motion, appellant stated that he felt "strongly" that the prosecution had abused the grand jury proceedings in procuring the indictment, that the prosecutor had used the grand jury to prepare his case, and that his publicized religious views and long hair may have prejudiced the grand jury against him. He also requested the grand jury material so that he could make sure that the grand jury had understood their function and had not been merely a "rubber stamp" of the prosecutor; he also sought to ascertain whether the prosecutor had disclosed any grand jury material to the local authorities. Finally, he cited to his right to inspect the grand jury list to challenge the jury selection process. "The Supreme Court repeatedly has recognized the importance of secrecy in grand jury proceedings, even after, as in this case, the grand jury has concluded its function." United States v. McMahon, 938 F.2d 1501, 1504 (1st Cir. ______________ _______ -5- 1991). Thus, to be entitled to grand jury material under Rule 6(e), appellant must show a "particularized need" for the material requested, see Pittsburgh Plate Glass Co. v. ___ ____________________________ United States, 360 U.S. 395, 399 (1959), or that "some ______________ possible grounds for dismissal would be produced." See ___ United States v. Llaca Orbiz, 513 F.2d 816, 818-19 (1st ______________ ____________ Cir.), cert. denied, 423 U.S. 861 (1975). Further, appellant ____________ bears the burden of showing that "the need for disclosure is greater than the need for continued secrecy and that [the] request is structured to cover only material so needed." See ___ Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 ________________ ______________________ (1979) (footnote omitted). The district court determined that appellant's request, based upon his strong feelings, did not meet the above standard. A district court has "substantial discretion" to decide whether to release grand jury material. Id. at 223. We do not think the district court abused its ___ discretion in this case. First, appellant's request was based only upon his desire to review the proceedings to __ search for impropriety. This is insufficient. See Walsh v. ______ ___ _____ United States, 371 F.2d 436, 437 (1st Cir.) (per curiam) ______________ (where defendant "merely asked [for] an opportunity to examine the [grand jury] records without specifying any reason," no abuse of discretion in denying request), cert. _____ denied, 387 U.S. 947 (1967). Further, appellant's "reasons" ______ -6- do not rise to the level of stating "particularized" needs. Rather, his statements are conclusory in nature and he cites to no evidence of a specific nature to support his requests; thus, the "presumption of regularity" remains. See Llaca ___ _____ Orbiz, 513 F.2d at 819 (where no evidentiary showing _____ proffered concerning allegation that secrecy of grand jury had been breached, grand jury proceedings presumed regular). Finally, as for appellant's challenge to the selection process, it does not contain any indication concerning what rights appellant believes the selection process violated. See id. at 819 n.5. ___ ___ 5. Appellant was arrested at his daughter's apartment after a warrant for his arrest had issued. He moved, in the trial court, to suppress his arrest on the ground that federal agents had entered his daughter's apartment, despite her objection, without a search warrant and without adequate notice. The district court denied the suppression motion, in part, because appellant had no "constitutionally protected interest" to assert. We agree. The Supreme Court has held that it is proper to allow "only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule's protection." See Rakas v. Illinois, 439 U.S. 128, 134 ___ _____ ________ (1978). That is, a defendant who claims that a search of another's premises was illegal has not had his own Fourth ___ ___ -7- Amendment rights violated. Id. To meet this "standing" ___ requirement, appellant "ha[s] the burden of showing . . . that he had a reasonable expectation of privacy" in the premises searched. See United States v. Aguirre, 839 F.2d ___ _____________ _______ 854, 859 (1st Cir. 1988). Such a showing is made where, among other things, a defendant presents evidence that he or she lived in the premises searched, kept personal belongings there or had the ability to restrict access to the premises. Id. ___ Appellant has not alleged that any of the above factors were present. He only argued below, as he does on appeal, the merits of the Fourth Amendment claim -- that the ______ search was illegal. However, under Rakas and Aguirre, the _____ _______ district court correctly refrained from reaching the merits of the challenged search where appellant failed to establish a privacy interest in his daughter's apartment. See Rakas, ___ _____ 439 U.S. at 150; Aguirre, 839 F.2d at 859. _______ 6. Finally, appellant claims that, before trial started, the district court denied him the right to be presumed innocent. Appellant alleges that this occurred when the court asked the jury the following question: "Has any juror already reached an opinion as to the guilt or innocence of this defendant?" According to appellant, each juror answered "no" by the shaking of heads or by silence. He -8- argues that by answering "no," the jury was expressing their opinion that they did not, in fact, presume him innocent. We reject this tortured interpretation. Plainly, by answering in the negative, the jurors were indicating that they had not formed any opinions concerning appellant's guilt ___ or innocence. In any event, just prior to the question, the court gave the following instruction: I will instruct you that under the [C]onstitution and laws of the United States, every defendant is presumed to be innocent, and that your duty as a juror will be to return a verdict of not guilty unless you are convinced beyond a reasonable doubt on the evidence and law admitted in this case that the government has proved that the defendant is guilty. It is hard to perceive how the court could have made plainer the presumption of innocence. For the foregoing reasons, the judgment of conviction is affirmed. Appellant's motion to strike the ________ government's brief is denied. ______ -9-